# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**BILLY FLETCHER**  **PLAINTIFF**
ADC #139682

v.  CASE NO. 5:16-CV-00201 BSM

**WENDY KELLY, Director,**
**Arkansas Department of Correction, et al.**  **DEFENDANTS**

## ORDER

The proposed findings and recommendations [Doc. No. 54] submitted by United States Magistrate Judge Joe J. Volpe, the parties' objections [Doc. Nos. 59, 60], and plaintiff Billy Fletcher's other filings which are construed as objections [Doc. Nos. 61, 62] have been reviewed and, after reviewing the entire record, *de novo*, the proposed findings and recommendations are adopted with one exception: Fletcher may not proceed on his claim for access to a ceremonial pipe and tobacco because the claim is moot.

In light of Fletcher's objections, *see* Doc. No. 60, at 1 (alleging fraud by the defendants in procuring his declaration and deposition), and out of an abundance of caution, his declaration [Doc. No. 40-23] and the deposition submitted by defendants [Doc. No. 40-1], are rejected; however, the deposition testimony submitted by Fletcher in support of his motion to strike [Doc. No. 48] is relied upon.

## I. DISCUSSION

### A. Sweat Lodge

The finding that Fletcher has failed to establish the denial of a sweat lodge violates

his rights under the First Amendment or RLUIPA, Doc. No. 54, at 19, is adopted. Fletcher objects, arguing that defendants have failed to establish that an absolute ban on a sweat lodge is the least restrictive means of protecting the admittedly compelling interests of prison security and safety. Doc. No. 60 ¶ 8. He attempts to distinguish his case from *Fowler v. Crawford*, 534 F.3d 931 (8th Cir. 2008), by asserting (1) that he is willing to accept alternatives to the traditional sweat lodge, Doc. No. 60, at 5, and (2) that the Varner Unit is "more medium or minimum than maximum security." Doc. No. 61 ¶ 3.

Fletcher's attempt to distinguish the security level at Varner from the maximum security prison in *Fowler* is rejected because Varner is a maximum security prison. Watson Decl. ¶ 7, Doc. No. 40-6. Although Fletcher now argues he is willing to accept alternatives to a traditional sweat lodge, he testified that he is not open to alternatives. When asked whether an alternative would be sufficient, Fletcher responded, "No." Fletcher Dep. 60:3, Doc. No. 48. When asked to explain why, Fletcher testified, "Because it's not a sweat lodge and there's not any darkness, no–steam, no–no ceremonial rocks or things. It wouldn't be a sweat lodge. [It] wouldn't be practicing a religion." *Id.* 60:6–10. "You can't go down to a bar and hold church services. It would be like holding church services in a bar." *Id.* 60:12–14. When asked, "So if you were to be given a closet that could have smoke in it and that could be dark, no lights at all, and you were allowed to be in there with smoke and steam, would that be acceptable," Fletcher again responded, "No, I don't think so, no. Because it wouldn't be a sweat lodge." *Id.* 61:6–8. "You wouldn't have participation from the fire, from the fire path, from the fire pit to the pit back and forth, the path that it travels,

the rocks travel outside." *Id.* 61:13–16. He also unequivocally stated that the sweat lodge "needs to be outside." *Id.* 62:8–12. Fletcher said that a fire keeper and bent willow poles are necessary. *Id.* 63:1–18; *see also* Doc. No. 51 ¶ 13. Further, Fletcher testified the lodge should be covered with material dark enough to prevent seeing inside of it. Fletcher Dep. 63:19–21. He insisted he needs access at least twelve times annually and that each ceremony consists of three or four sessions of twenty-minute durations. *Id.* 64:11–65:1.

"Unfortunately for [Fletcher], the burden of production shifted to him once ADC officials [came] forth with evidence that other means by which [Fletcher] might practice his Native American faith were unacceptable to him." *Fowler*, 534 F.3d at 940. Perhaps Fletcher is willing to compromise now, but he cannot create a genuine issue of material fact simply by contradicting his own previous deposition testimony. *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 475 (8th Cir. 2006). It is clear that defendants seriously considered other alternatives, such as a dark room that would hold steam and smoke. Fletcher, however, flatly rejected alternatives that did not involve fire, darkness, and a structure constructed out-of-doors with willow poles. Defendants moved for summary judgment based on Fletcher's statements, and that is the issue as it now stands.

Even if Fletcher's attempts at compromise were considered, his proposed alternative to a traditional sweat lodge is hardly a practical one. He suggests that "a more practical and modern technological method would be to utilize infrared heat sensing vision equipment and/or audio listening devices, which would be economical for such close quarters monitoring." Doc. No. 52, at 4; Doc. No. 51, at 6. He proposes as follows:

> Specifically, the sweat lodge would be permanently built inside the prison compound with wood, bricks or cement blocks, for a capacity of about fifteen (15) inmates. It would have a roof but not a floor. This would allow participants to sit upon the earth, which is significant. In the center, a small gas or electrical heating device would be securely installed in such a manner that it poses no threat. The heating device would be similar to or of a heating device from a conventional sauna, one that is specifically designed, accredited and approved for pouring water upon a heated surface to create steam. This would allow participants to utilize the traditional mixtures of water with herbs, roots and barks to create steam for purification. The room would be thermostatically controlled and with exhaust fans, to maintain a constant and safe temperature; a temperature approved by the ADC's health provider. And the room would not be completely dark; there would be sufficient lighting (determined by staff) to enable observation of participants via a window or windows. All material would be donated by outside sources.

Doc. No. 60, at 7. Fletcher insists that "the existence of obvious, easy alternatives may be evidence that the regulation . . . is an exaggerated response to prison concerns." Doc. No. 52, at 4.

It is unclear how Fletcher believes his suggestions are economical or how he can get donations to cover a state-of-the-art sweat lodge when he admits he has not purchased an eagle feather or headdress because they are too expensive. Fletcher Dep. 50:1– 53:9. In addition to demonstrating the substantial cost of building a sweat lodge like the one Fletcher describes, Fletcher demonstrates that the accommodation he seeks presents a constantly moving and somewhat arbitrary target. Apparently, willow poles, open flame, total darkness, and construction out-of-doors are no longer requirements as originally asserted.

    B.    <u>Ceremonial Pipe and Tobacco</u>

The finding that Fletcher's RLUIPA claim for access to a ceremonial pipe and tobacco should proceed because defendants have failed to show that a total ban is the least restrictive

means of furthering the government's compelling interest in prohibiting contraband, Doc. No. 54, at 24, is rejected because Fletcher's request for a ceremonial pipe and tobacco is now moot. Fletcher has made it clear that a pipe ceremony will not suffice in the absence of sweat lodge access or a religious advisor. Fletcher Dep. 42:6–14 (religious advisor will keep tobacco in his possession), 44:22–45:10; Doc. No. 48, at 35 ("the sweat lodge ceremony is indispensable" and "cannot be replaced with 'smudging' for example, or with the sacred pipe ceremony"); Doc. No. 60, at 7 (sweat lodge and ceremonial pipe and tobacco must be practiced "in conjunction"). Further mooting the issue is the defendants' willingness to reasonably accommodate Fletcher by allowing access to a ceremonial pipe mixture containing 1% tobacco for use during religious ceremonies (if he decides a sacred pipe ceremony is better than nothing, even in the absence of a sweat lodge). Am. Kelley Decl. ¶ 33, Doc. No. 59-1 ("When a qualified, free-world, Native American Religious advisor is found for the Native American inmates at the ADC, that person will be authorized to conduct ceremonial pipe services in the presence of ADC security staff."). Fletcher has conceded that this ratio is adequate. Doc. No. 51, at 8 ("kinnikinnik . . . is a mixture of primarily herbs, roots, and barks, with only a pinch (one to five percent) of tobacco"). Thus, Fletcher's claim for a ceremonial pipe and tobacco is moot.

  C. <u>Eagle Feather, Headdress, and Religious Advisor</u>

  The findings that Fletcher has failed to demonstrate that the denial of an eagle feather, headdress, or religious advisor violates his rights under the First Amendment or RLUIPA, Doc. No. 54, at 11, 14, are adopted. Additionally, Fletcher's testimony demonstrates his

5

claim for a religious advisor is moot. Fletcher Dep. 53:18 ("there's no reason to have a medicine man if you don't have the sweat lodge.").

D. Equal Protection

The finding that Fletcher has failed to demonstrate that the ADC's refusal to provide his requested religious accommodations violates his rights under the Equal Protection Clause, Doc. No. 54, at 25, is adopted.

## II. CONCLUSION

For these reasons, defendants' motion for summary judgment and amended motion for summary judgment [Doc. Nos. 37, 40] are granted in part, and Fletcher's complaint is dismissed with prejudice. It is further certified that an *in forma pauperis* appeal from this order would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED this 12th day of March 2018.

_____
UNITED STATES DISTRICT JUDGE